UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| INN-ONE HOME, LLC, d/b/a OUR HOUSE RESIDENTIAL CARE HOMES, <br><br> Plaintiff, <br><br> v. <br><br> COLONY SPECIALITY INSURANCE COMPANY and JAMES RIVER INSURANCE COMPANY, <br><br> Defendants, <br><br> COLONY SPECIALITY INSURANCE COMPANY, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> INN-ONE HOME, LLC, d/b/a OUR HOUSE RESIDENTIAL CARE HOMES, <br><br> Counterclaim Defendant. | Case No. 19-cv-00141 |

**OPINION AND ORDER GRANTING COLONY SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING INN-ONE HOME, LLC'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Docs. 19 & 20)

Plaintiff Inn-One Home, LLC ("Inn-One") brings this suit against Colony Specialty Insurance Co. ("Colony"), its former primary coverage insurer, and James River Insurance Company ("James River")[1], its former coverage insurer, asserting a

---

[1] James River was made a party to the action because Colony's policy contains a provision by which it may seek to apportion or qualify the insurance available to Inn-One on the basis of the James River policy.

breach of contract by Colony and seeking a declaratory judgment regarding its right to coverage for claims made against it by the Estate of Marilyn Kelly (the "Estate") in an underlying state court civil suit (the "Underlying Suit").

On June 5, 2020, Colony moved for summary judgment, seeking a declaration that it has no duty to defend or indemnify Inn-One in the Underlying Suit under the terms of a claims-made liability insurance policy it issued to Inn-One. (Doc. 19.) On that same date, Inn-One cross-moved for partial summary judgment on its breach of contract claim against Colony. (Doc. 20.) Inn-One and Colony oppose each other's motion. The court heard oral argument on August 24, 2020, at which time it took the parties' cross-motions under advisement.

Inn-One is represented by Joshua L. Simonds, Esq. Colony is represented by William L. Boesch, Esq. James River, which took no position on the pending motions, is represented by Gary M. Burt, Esq.

## I.    The Undisputed Facts.

### A.    Events Giving Rise to the Claims in the Underlying Suit.

In May 2015, Marilyn Kelly was admitted to a residential care facility in Rutland, Vermont operated by Inn-One because she suffered from dementia. While at Inn-One's facility, Ms. Kelly was allegedly medicated with the anti-psychotic drug haloperidol without the consent of her legal guardian. On December 31, 2015, Marissa Flagg, an Inn-One caregiver, intentionally pushed Ms. Kelly, causing her to fall and suffer injuries (the "Flagg Assault"). Ms. Flagg was later terminated by Inn-One and criminally prosecuted for assaulting Ms. Kelly. On January 15, 2016, Ms. Kelly was hospitalized. She died of bronchopneumonia on February 1, 2016.

The Vermont Department of Disabilities, Aging, and Independent Living ("DAIL") performed an unannounced inspection of Inn-One's facility on February 2 and 3, 2016. DAIL investigators produced a twenty-six page report (the "DAIL Report") which they delivered to Inn-One on or about February 18, 2016. The DAIL Report identifies numerous "deficiencies" discovered during the agency's investigation, including the following:

> Resident #3 was observed on a video surveillance tape dated 12/31/15 at 1:58:58 through 2:00:10, being pushed by resident care attendant #1, from behind causing the resident to fall to the floor. The employee walked away from Resident #3 who was lying on the floor. The attendant did not offer the resident assistance nor did s/he report the occurrence to resident care attendant #2, who was on duty at the time. Per intake information the perpetrator abandoned his/her position at approximately 3 AM, leaving the facility understaffed and without a medication technician.
>
> . . .
>
> Per resident care service note dated 12/31/15, the resident returned to the facility after Emergency Room evaluation with a diagnosis of right hip contusion and treatment advised.

(Doc. 19-4 at 21.) The date and time of the incident, as well as the events described, match the date, time, and circumstances of the Flagg Assault.

On September 7, 2017, counsel for Ms. Kelly's Estate sent a letter to Inn-One asserting that Ms. Kelly "suffered injuries and eventually died as the result of negligent care she received at" Inn-One's facility. (Doc. 21-7 at 2.) Upon receipt of the Estate's letter, Inn-One notified its then-insurance carrier, James River, and provided a copy of the Estate's letter. On October 6, 2017, Inn-One contacted Colony and provided the same information. On October 26, 2017, Colony informed Inn-One that it would not defend or indemnify Inn-One for claims made by the Estate because no claim was made or reported to Colony during the applicable policy period.

On January 4, 2018, the Estate and Ms. Kelly's children filed the Underlying Suit against Inn-One, asserting claims of negligence, breach of contract, wrongful death, negligent hiring, and violation of Vermont's Consumer Protection Act arising out of Inn-One's chemical restraint of Ms. Kelly and the Flagg Assault, both of which they contend contributed to Ms. Kelly's death.

### B. The Colony Insurance Policy.

From March 28, 2015 to March 28, 2016 ("Policy Period 1"), Colony provided long term care facilities insurance to Inn-One pursuant to Policy No. AD515227 (the "Policy"). On March 23, 2016, Inn-One submitted an application seeking an additional year of coverage through its insurance broker. Colony subsequently renewed the Policy

3

for a one-year term from March 28, 2016 through March 28, 2017 ("Policy Period 2") subject to Colony's receipt and review of certain documents "including current licenses and [the] most recent reports of state inspections for each of Inn-One's facilit[ies]." (Doc. 19-2 at 2, ¶ 11.) The renewal application required Inn-One to answer the following question: "Have there been any claims or incidents[] within the last 12 months that haven't been reported to us?" This question was followed by illustrative examples including: "[i]njury to a client, patient, or resident that required hospitalization;" "[i]ncident involving abuse[;]" "[i]ncident that generated a formal complaint or notice from any federal or state regulatory body;" and "[i]mproper medication or improper dosage resulting in hospitalization[.]" (Doc. 19-6 at 2.) Inn-One answered each of these questions in the negative.

On April 7, 2016, Inn-One's insurance broker provided Colony with the requested documents, including a copy of the DAIL Report. That same day, Colony's underwriting department notified Inn-One's broker by email that "the report for [the facility in which Ms. Kelly resided] is not acceptable so just a heads up that it's our intention to issue a non-renewal on the [P]olicy next year." (Doc. 19-8 at 2.) In response to the broker's inquiry regarding "what is not acceptable[,]" the Colony representative explained, "if you read the [twenty-six]-page report you submitted today you'll see that there are numerous deficiencies, most of which could be quite serious and indicate a poorly managed facility." *Id.*

The Policy's terms and conditions are identical for Policy Period 1 and Policy Period 2 and provide coverage for both professional liability and commercial general liability ("CGL"). The Policy defines "bodily injury" as "bodily injury, mental anguish, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 19-5 at 20; Doc. 19-7 at 20.) A "claim" is:

    a.    a demand for money; or
    b.    the filing of "suit";
    naming the insured and alleging:

4

    (1) a "wrongful act" resulting from the rendering of or the failure to render "professional services"; or

    (2) an offense or an "occurrence".

*Id.*

  The Policy defines an "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 22. "Professional services" include "the providing of . . . medical . . . mental health or nursing service or treatment[;] . . . medications, medical supplies or medical appliances;" or "health or therapeutic service, treatment or advice[.]" *Id.* A "wrongful act" is:

> an act, error or omission in the rendering of or failure to render "professional services" by any insured covered under this Policy and performing the operations described under BUSINESS DESCRIPTION in the Declarations including an act, error or omission resulting in the violation of any right guaranteed to your residents under state or federal law or guidelines regulating your business as a resident health facility.

*Id.* at 23. The "BUSINESS DESCRIPTION" in the Policy's Declarations is "[Assisted Living Facility.]" *Id.* at 6.

  The Policy provides professional liability coverage on a claims-made and reported basis pursuant to which Colony will "pay . . . those sums the insured becomes legally obligated to pay as 'damages' because of a 'wrongful act' to which this insurance applies." (Doc. 19-5 at 26; Doc. 19-7 at 26.) The professional liability coverage "applies to 'wrongful acts' . . . only if" the following conditions are met:

  (2) prior to the effective date of this Policy, no insured had knowledge of any 'claim' or any 'wrongful act' that could reasonably give rise to a 'claim' under this Policy;

    . . .

  (6) the 'claim' is first made against an insured subsequent to this Policy's effective date and prior to the expiration of this Policy or during the Supplemental Extended Reporting Period; if applicable;

  (7) the 'claim' is first reported to us subsequent to this Policy's effective date and prior to the expiration of this Policy or during any applicable Extended Reporting Period we provide and in accordance with the provisions set forth in SECTION VI – CONDITIONS, 5.

5

> > **Duties In the Event of A Claim Or Suit** within the Common Policy Provisions; and
>
> (8) any incident, event, offense, or circumstance that reasonably may result in a subsequent covered 'claim' under this Policy is reported to us subsequent to this Policy's effective date and prior to the expiration of this Policy and in accordance with the provisions set forth in SECTION VI – CONDITIONS, 4. **Duties In The Event Of An Occurrence, Offense, or Incident** within the Common Policy Provisions.

*Id.*

Pursuant to the Policy's CGL coverage, Colony agreed to pay "those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' . . . to which this insurance applies." *Id.* at 29. The CGL coverage applies "only if[:]"

> (3) a "claim" because of . . . "bodily injury" . . . is first made against any insured and reported to us in accordance with
>
> > (a) paragraph c. below; and
> >
> > (b) the provisions set forth in **SECTION VI – CONDITIONS, 5. Duties In the Event Of A Claim Or Suit** within the Common Policy Provisions;
>
> during the "policy period" or any Extended Reporting Period we provide[.]
>
> c. A "claim" will be deemed to have been made at the earlier of the following times:
>
> > (1) when notice of such "claim" is received and recorded by us; or
> >
> > (2) when we make settlement in accordance with Paragraph **1.a.** above.
>
> All "claims" because of "bodily injury" to the same person . . . will be deemed to have been made at the time the first of those 'claims' is made against any insured and reported to us.

*Id.*

"Section VI – Conditions" of the Policy's Common Policy Provisions provides:

**4.    Duties In The Event Of An Occurrence, Offense Or Incident**

6

      a.    Regardless of whether one or more coverage part(s) comprising this Policy provide coverage on a claims-made and reported or an occurrence basis, you must report any "occurrence", offense, or incident that may subsequently result in a "claim" against you.

           If such notice is received by us during the "policy period", then any "claim" subsequently made against you resulting from that "occurrence", offense, or incident shall be deemed, under a claims-made and reported coverage part, to have been made on the date such written notice is received by us.

      b.    When you provide us with written notice in accordance with **5.a.** above, such written notice must include:

          (1)    a description of the "occurrence", offense, or incident that took place including the date and where it occurred;

          (2)    the names and addresses of any injured persons and witnesses;

          (3)    the nature and location of any injury or damage that has or may result from any "occurrence", offense or incident; and

          (4)    why you believe the "occurrence", offense, or incident may result in a "claim".

**5.**    **Duties In The Event Of A Claim Or Suit.**

      a.    If a "claim" is received by any insured, you must:

          (1)    immediately record the specifics of the "claim" and the date received; and

          (2)    notify us as soon as practicable.

      b.    You and any other involved insured must:

          (1)    immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or a "suit"[.]

*Id.* at 18.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). "Where parties file cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks, alterations, and citation omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

### B. Whether Inn-One Reported An Occurrence Within the Time Period Specified By the Policy.

Colony asserts that Inn-One is not entitled to a defense or indemnity because it did not provide Colony with notice of the events that gave rise to the Estate's claims in the Underlying Suit, which occurred during Policy Period 1, until after the Estate filed suit against Inn-One in January 2018. Inn-One counters that the Policy does not impose a specific time limit for reporting an occurrence, offense, or incident that may give rise to a claim and asserts that it substantially complied with the Policy's reporting requirements by submitting the DAIL Report to Colony after Policy Period 2 began.

"An insurer's duty to defend . . . is broader than its duty to indemnify." *Garneau v. Curtis & Bedell, Inc.*, 610 A.2d 132, 134 (Vt. 1992). The duty to defend applies "whenever it is clear that the claim against the insured might be of the type covered by the policy[,]" *id.*, whereas the duty to indemnify arises only when there is a covered loss or injury. *See Coop. Ins. Cos. v. Woodward*, 2012 VT 22, ¶ 11, 191 Vt. 348, 353, 45 A.3d 89, 93 (holding that "[i]f a claim is made or suit is brought against an insured for damages because of bodily injury that is caused by an occurrence, there is coverage under the policy, unless an exclusion applies.") (internal quotation marks and citation omitted). If there is no duty to indemnify as a matter of law, there is no duty to defend. *See Garneau*, 610 A.2d at 134 (noting duty to defend does not apply "if there is no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify") (internal quotation marks and citation omitted).

"'Claims-made' policies generally restrict coverage to claims made during the policy period 'without regard to the timing of the damage or injury.' 'Occurrence based' policies, on the other hand, provide coverage only for injury or property damage 'which occurs during the policy period.'" *Bradford Oil Co. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 7, 190 Vt. 330, 335, 54 A.3d 983, 987 (quoting *Towns v. N. Sec. Ins. Co.*, 2008 VT 98, ¶¶ 28-29, 184 Vt. 322, 341-42, 964 A.2d 1150, 1163-64). A claims-made policy is a "cheaper . . . form of coverage specifically designed to limit the insurer's risk by restricting coverage to claims made during the policy period[.]" *Towns*, 2008 VT 98 at

9

¶ 29, 184 Vt. at 342, 964 A.2d at 1164 (citation and emphasis omitted). Accordingly, "[d]uring the period the claims-made policy [is] in effect, . . . [the insurer is] obligated to cover a claim only if damages were caused by a[n] . . . incident that occurred during the claims-made policy period *and* if the claim was reported to the company while the claims-made policy [is] in effect." *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 13, 180 Vt. 203, 209, 908 A.2d 455, 460 (emphasis in original).

The Policy's professional liability coverage applies "only if . . . any incident, event, offense, or circumstance that reasonably may result in a subsequent covered 'claim' under this Policy is reported to us subsequent to this Policy's effective date and prior to the expiration of this Policy[.]" (Doc. 19-5 at 26; Doc. 19-7 at 26.) The CGL coverage applies "only if . . . a claim . . . is first made against any insured and reported to [Colony] . . . during the policy period[,]" which was March 28, 2015 to March 28, 2016 for Policy Period 1. *Id.* at 29. The terms of the Policy's CGL coverage provide that "[i]f . . . notice" of an "'occurrence,' offense, or incident that may subsequently give rise to a 'claim' against [Inn-One] . . . is received by [Colony] during the 'policy period,' then any 'claim' subsequently made" based on that occurrence "shall be deemed . . . to have been made on the date such written notice was received by us." *Id.* at 18.

Under Vermont law, "[t]he proper construction of language in an insurance contract is a question of law[.]" *Trinder v. Conn. Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 11, 189 Vt. 492, 496, 22 A.3d 493, 496 (citation omitted). "An insurance policy is construed according to its terms and the evident intent of the parties as expressed in the policy language." *Rainforest Chocolate, LLC v. Sentinel Ins. Co., Ltd.*, 2018 VT 140, ¶ 6, 209 Vt. 232, 235, 204 A.3d 1109, 1111 (internal quotation marks and citation omitted). Courts must "review the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *Woodward*, 2012 VT 22 at ¶ 9, 191 Vt. at 352-53, 45 A.3d at 93 (internal quotation marks and citation omitted).

According to the Policy's "plain, ordinary, and popular meaning[,]" *Brillman v. New England Guaranty Ins. Co., Inc.*, 2020 VT 16, ¶ 19, 228 A.3d 636, 641, Inn-One was obligated to provide notice of an occurrence, offense, or incident that could give rise to a covered claim during the "policy period," which ran from the Policy's effective date to its expiration date, in order to satisfy a condition precedent to coverage. The events giving rise to the Estate's claims in the Underlying Suit occurred during Policy Period 1, and Inn-One alleges that it gave Colony notice of those events during Policy Period 2.

Inn-One's proposed construction of the Policy would extend the applicable time limit for providing notice beyond the "policy period" to include any subsequent renewal term. This interpretation is not supported by the Policy's language and would "rewrite unambiguous terms in a policy to grant one party a better bargain than the one it made." *Id.* (internal quotation marks and citation omitted).

### C. Whether the DAIL Report Complies With the Policy's Requirements For the Contents of Notice of An Occurrence, Offense, or Incident.

Alternatively, Inn-One argues that it "substantially complied" with the Policy's requirements for giving notice of any "'occurrence', offense, or incident that may subsequently result in a 'claim'" (Doc. 19-7 at 18) because the DAIL Report "provided all salient details of location, date, events, [and] nature of injury." (Doc. 20 at 9.) It points out that the Policy's notice requirement is ambiguous because the subsection, which is number 4. b., contains an internal reference to "5. a. above[.]" (Doc. 19-5 at 18; Doc. 19-7 at 18.) A typographical error in the Policy is not sufficient to render the provision ambiguous. *See Huff v. Watson Services, Inc.*, 2009 WL 382729, at *8 (S.D.N.Y. Feb. 13, 2009) (holding that "where particular wording in a contract appears to have been a mere typographical error, where the party asserting that it is not a typographical error does not suggest any other possible reason for the putative error, and where the error does not alter the overall meaning of the clause in any way, the existence of the error will not prevent a court from determining, for purposes of a motion for summary judgment, that the contract was unambiguous.") (internal quotation marks and citation omitted). The only

11

rational interpretation of the Policy's reference to "5.a. above" is a reference to "4.a. above."

With regard to occurrence-based policies, the Vermont Supreme Court has held that "an insurer may not forfeit its insured's protection unless it demonstrates that the notice provision was breached, and that it suffered substantial prejudice from the delay in notice[.]" *Coop. Fire Ins. Ass'n of Vt. v. White Caps, Inc.*, 694 A.2d 34, 38 (Vt. 1997) (internal quotation marks and citation omitted). In doing so, it "express[ed] no opinion" as to "whether the rule should be different when the case involves a 'claims made' policy, as some courts have held[.]" *Id.* at 39 n.2. In *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, the Vermont Supreme Court applied the notice-prejudice rule to an insurance policy in which coverage was conditioned on an occurrence within the policy period (and "coverage territory") and a "claim for damages [that is] first made against any insured . . .during the policy period." 2004 VT 124, ¶ 4, 177 Vt. 421, 424, 869 A.2d 82, 85. In that case, unlike in the instant action, there was no requirement that a claim be reported to the insurer within the policy period as a condition precedent to coverage.

The majority of courts have concluded that "the failure to report a claim within the time periods specified in a claims-made[-and-reported] policy is sufficient to defeat coverage without a showing of prejudice to the insurer." *Countryside Co-op v. Harry A. Koch Co.*, 790 N.W.2d 873, 886 (Neb. 2010) (footnote omitted).[2] The Restatement of

---

[2] *See, e.g., Banjosa Hosp., LLC v. Hiscox, Inc.*, 788 F. App'x 531, 532 (9th Cir. 2019) (noting under Montana law, insurer need not prove prejudice to deny coverage if the insured failed to report the claim during the term of claims-made-and-reported policy); *McCarty v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 699 F. App'x 464, 469 (6th Cir. 2017) (same holding under Ohio law); *Philadelphia Consol. Holding Corp. v. LSI-Lowery Sys., Inc.*, 775 F.3d 1072, 1078 (8th Cir. 2015) (Missouri law); *DiLuglio v. New England Ins. Co.*, 959 F.2d 355, 359 (1st Cir. 1992) (Rhode Island law); *Hanover Ins. Co. v. R.W. Dunteman Co.*, 446 F. Supp. 3d 336, 348 (N.D. Ill. 2020) (Illinois law); *Citizens Ins. Co. of Am. v. Assessment Sys. Corp.*, 2019 WL 4014955, at *10 (D. Minn. Aug. 26, 2019) (Minnesota law); *Centurion Med. Liab. Protective Risk Retention Grp. Inc. v. Gonzalez*, 296 F. Supp. 3d 1212, 1218 (C.D. Cal. 2017) (California law); *Clauson & Atwood v. Professionals Direct Ins. Co.*, 2013 WL 1966058, at *6 (D.N.H. May 13, 2013) (New Hampshire law); *Jennings Constr. Servs. Corp. v. Ace Am. Ins. Co.*, 783 F. Supp. 2d 1209, 1212–13 (M.D. Fla. 2011) (Florida law); *Gargano v. Liberty Int'l Underwriters, Inc.*, 575 F. Supp. 2d 300, 310 (D. Mass. 2008) (Massachusetts law); *Trek Bicycle*

Liability Insurance endorses this same approach and notes "[w]ith respect to claims first reported after the conclusion of the claim-reporting period in a claims-made-and-reported policy, the failure of the insured to satisfy the claim-reporting condition in the policy excuses an insurer from performance under the policy without regard to prejudice". Restatement of the Law of Liability Insurance § 35(2) (2019). Because the Vermont Supreme Court often looks to the Restatement for guidance, *Birchwood Land Co., Inc. v. Krizan*, 2015 VT 37, ¶ 9, 198 Vt. 420, 425, 115 A.3d 1009, 1012 (noting that "[w]e frequently have adopted provisions of this Restatement where our law is underdeveloped"), the court predicts that Vermont's highest state court will not require a showing of prejudice before coverage may be denied for failure to make and report a claim within the applicable policy period. *See ALPS Property & Cas. Ins. v. Unsworth LaPlante LLC et al.*, No. 5:20-cv-101, slip op. at 11 (D. Vt. Jan. 25, 2021) (holding that "the denial of a prejudice requirement for [claims-made-and-reported] policies by a majority of courts in other jurisdictions and the recent adoption of the same position in the Restatement of the Law of Liability Insurance § 35 makes it extremely likely that the Vermont Supreme Court will adopt the same rule when presented with the opportunity.").

As for Inn-One's alternative argument, "substantial compliance" cannot be found if it would require an insurer to review documents and intuit whether a claim is likely to be made instead of placing that burden on the insured as the Policy requires. *See* Doc. 19-7 at 18 (requiring that an insured "must report any 'occurrence', offense or incident that may subsequently result in a 'claim' against [it]" and such written notice must include, among other things, the identity and contact information for the injured person and witnesses, a description of the event and the nature and location of any injury, and "why [the insured] believe[s] the 'occurrence', offense, or incident may result in a 'claim'."). To allow the DAIL Report to serve as notice would effectively rewrite the plain and unambiguous language of the Policy in Inn-One's favor. *See Resolution Trust Corp. v.*

---

*Corp. v. Mitsui Sumitomo Ins. Co.*, 2006 WL 1642298, at *2–3 (W.D.Ky. June 7, 2006) (Kentucky law).

13

*Ayo*, 31 F.3d 285, 290-91 (5th Cir. 1994) (applying Louisiana law and holding that coverage was properly denied because "regulatory reports . . ., management reports . . ., [and] financial reports" provided to the insurer did not specify a "wrongful act that might give rise to a claim" as required by the claims-made policy.). Although the DAIL Report provided some information related to the potential for a claim, it did not satisfy Inn-One's burden to actually report an occurrence, offense, or incident and to provide the required information that would assist Colony in investigating the facts and determining its potential exposure. As a result, neither a lack of prejudice nor substantial compliance excuses Inn-One's failure to report the events giving rise to the Underlying Suit in Policy Period 1.

### D. Whether Inn-One's Knowledge of a Potential Claim Precludes Coverage During Policy Period 2.

The Policy excludes coverage for claims or wrongful acts that the insured knew of, or could reasonably have known about, prior to the Policy's effective date. Colony asserts that Inn-One is not entitled to a defense or indemnification in the Underlying Suit for the additional reason that it failed to disclose the events giving rise to the Estate's claims prior to the commencement of Policy Period 2. Instead, Inn-One denied knowledge of an "injury to a client, patient, or resident that required hospitalization[,]" an "[i]ncident involving abuse[,]" and an "[i]ncident that generated . . . notice form any federal or state regulatory body[.]" (Doc. 19-6 at 2.)

Without denying that the Flagg Assault should have been reported, Inn-One argues that, based on Colony's receipt and review of the DAIL Report, Colony "could have rejected the coverage or added exclusions to the coverage[,]" (Doc. 28), but instead offered coverage during Policy Period 2 and is therefore estopped from invoking Inn-One's prior-knowledge as a defense to coverage.

The Policy's professional liability provisions state that the coverage "applies to 'wrongful acts', but only if . . . prior to the effective date of this Policy, no insured had knowledge of any 'claim' or any 'wrongful act' that could reasonably give rise to a 'claim' under this Policy." (Doc. 19-7 at 26.) Its CGL coverage "does not apply to any

14

'claim': . . . [b]ased upon or arising out of . . . an 'occurrence' or offense prior to the effective date of the policy that any insured knew or could have reasonably foreseen would give rise to a 'claim'" or "any 'occurrence,' offense, 'claim,' act, error or omission disclosed in the application for this [P]olicy." *Id.* at 30-31. "[P]rior-knowledge conditions" like the ones contained in the Policy "are common in claims-made policies because they ensure that only risks of unknown loss are potentially incurred and prevent an insured from obtaining coverage for the risk of a known loss, which would be unfair to the insurer." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1303 (10th Cir. 2011) (citations omitted).

Courts apply a two-part test to determine if a prior-knowledge condition precludes coverage, "asking first, whether the insured had actual knowledge of a suit, act, error or omission, a subjective inquiry; and second, whether a reasonable professional in the insured's position might expect a claim or suit to result, an objective inquiry." *Metro. Dist. Comm'n v. QBE Americas, Inc.*, 416 F. Supp. 3d 66, 72 (D. Conn. 2019) (emphasis omitted); *see also Cohen-Esrey Real Estate Servs., Inc.*, 636 F.3d at 1303-04 (applying two-part, subjective-objective analysis for applicability of prior-knowledge condition); *Fishman v. Hartford*, 980 F. Supp. 2d 672, 678 (E.D. Pa. 2013) (discussing the "mixed subjective/objective standard for determining what constitutes prior knowledge of a possible insurance claim"). Where "reasonable persons can draw but one inference" regarding "whether the insured has acted reasonably[,]" the objective inquiry may be resolved by the court as a question of law. *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399, 411 (D.D.C. 2011) (citation omitted).

Inn-One does not dispute that it had knowledge of the Flagg Assault. The subjective part of the two-part test is therefore satisifed. "[I]t is not necessary that the [insured] have actually formed an expectation that a claim would be filed." *Am. Special Risk Mgmt. Corp. v. Cahow*, 192 P.3d 614, 629 (Kan. 2008). Instead, the second part of the test asks whether a reasonable insured would expect a claim or lawsuit to result. *See Cohen-Esrey Real Estate Servs., Inc.*, 636 F.3d at 1304 (finding that, where insured knew that its employee had defrauded the Department of Housing and Urban Development, had

previously been caught engaging in theft and dishonesty, and had not been fired or subjected to stricter oversight, "[c]ertainly any insured could reasonably have foreseen that these facts might result in a [c]laim under this [p]olicy.") (internal quotation marks, citation, and emphasis omitted). In this case, after the Flagg Assault, in light of Ms. Flagg's termination and criminal prosecution, it was objectively reasonable for Inn-One to expect a claim or lawsuit to result. Indeed, no rational fact finder could reach a different conclusion.

In the alternative, Inn-One argues that Colony waived its rights under the prior-knowledge condition by opting not to rescind or amend the Policy upon receipt of the DAIL Report. "[W]aiver is the intentional relinquishment of a known right and involves both knowledge and intent." *City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 685 (D. Vt. 2002). Under Vermont law, the party claiming a wavier carries the burden of establishing an "intention permanently to surrender the right in question" and, if the expression of intent is implied, that it was "unequivocal[.]" *Id.* at 680-81 (quoting *Dunbar v. Farnum*, 196 A. 237, 241 (Vt. 1938)).

In response to the information in the DAIL Report, Colony continued to provide Inn-One with coverage for Policy Period 2. In doing so, it notified Inn-One's broker that it did not plan to offer subsequent renewals. "At best, from [Inn-One's] perspective, [Colony's] conduct was equivocal," because although Colony indicated that it would be unwilling to assume the risk of continuing to insure Inn-One in the future, it continued to do so in Policy Period 2. *Anderson v. Coop. Ins. Cos.*, 2006 VT 1, ¶ 12, 179 Vt. 288, 291, 895 A.2d 155, 159 (finding no waiver where insurer denied claim but offered to retroactively reinstate expired policy without expressly excluding coverage for that claim). Because Colony did not unequivocally express an intent to waive a Policy provision, Inn-One "had no basis for a reasonable, honest belief that [Colony] intended to forego its right to deny coverage." *Id.* at 292. In such circumstances, no waiver may be found.

Inn-One's estoppel claim fares no better. To establish that an insurer is estopped from relying upon a prior-knowledge condition as a basis to deny coverage, Inn-One must establish:

> first, the party to be estopped must know the facts; second, the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

*RLI Ins. Co. v. Klonsky*, 771 F. Supp. 2d 314, 331 (D. Vt. 2011) (quoting *Beecher v. Stratton Corp.*, 743 A.2d 1093, 1096 (Vt. 1999)).

Even assuming *arguendo* that Colony "kn[e]w the facts," *id.*, Inn-One was not itself "ignorant of the true facts" and proffers no evidence that Colony intended for Inn-One to rely on its April 7, 2016 email as indicative of its intent to forego the Policy's prior-knowledge condition. Inn-One also does not identify any action that it took in reliance on Colony's response to the DAIL Report, nor does it contend that it would have terminated the Policy had it known that the prior-knowledge condition remained in force. Far from relying on any representation made by Colony to its detriment, Inn-One received coverage for Policy Period 2 notwithstanding the concerns Colony raised in response to the DAIL Report. *See id.* at 332 (rejecting equitable estoppel argument where defendants could not show they were prejudiced by "the five months that they believed they had excess liability coverage"). In any event, under Vermont law, "promissory estoppel will not apply when the relationship of the parties is governed by a contract." *LoPresti v. Rutland Regional Health Services, Inc.*, 2004 VT 105, ¶ 47, 177 Vt. 316, 337, 865 A.2d 1102, 1119. Here, the Policy constitutes the parties' contract. There is thus neither a factual nor legal basis for finding that promissory estoppel applies.

Because Inn-One failed to provide notice of an occurrence within the relevant policy period and failed to report incidents that it knew could give rise to a claim prior to the commencement of Policy Period 2, it is not entitled to a defense or indemnification

17

from Colony in the Underlying Suit. Colony thus did not breach its contractual duties to Inn-One by denying both a defense and indemnification for the Estate's claims.

## CONCLUSION

For the foregoing reasons, Colony's motion for summary judgment (Doc. 19) is GRANTED and Inn-One's cross-motion for partial summary judgment is DENIED (Doc. 20).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of February, 2021.

Christina Reiss, District Judge
United States District Court